# United States Tax Court

T.C. Summary Opinion 2023-10

JONATHAN COLE PHILLIPS AND EVA V. PHILLIPS,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 21344-17S.                                    Filed March 21, 2023.

————

Jonathan Cole Phillips and Eva V. Phillips, pro se.

*Philip Myers*, *Jamie M. Powers*, *Vassiliki Economides Farrior*, and *Elizabeth Downs*, for respondent.


## SUMMARY OPINION

PARIS, *Judge*:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the Petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

By notice of deficiency dated August 15, 2017, respondent determined a deficiency in federal income tax of $4,813 for petitioners' 2014 tax year. The only issue before the Court is whether petitioners are entitled to deduct job expenses and certain miscellaneous expenses

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

totaling $37,535, reported on their return on Schedule A, Itemized Deductions, for tax year 2014.

*Background*

I.   *Petitioners' Background*

Petitioners resided in Oklahoma when they filed the Petition. Petitioners are husband and wife who filed a joint federal income tax return for tax year 2014.

Petitioners resided in Yukon, Oklahoma, from the beginning of 2014 until mid-August. During that period Mr. Phillips was employed as a staff pastor at the Gate Church in Oklahoma City and Mrs. Phillips was a salesperson at a furniture store.

As a pastor at the Gate Church, Mr. Phillips had many responsibilities. In addition to his religious and ministerial duties, he provided facilities maintenance, tech work, and graphic design services for the church. In addition, he frequently traveled. He attended conferences and retreats, met with ministers from other churches in the Gate Church's network of churches, and would sometimes drive with a trailer to pick up large equipment, such as soundboard or lighting rigs.

II.   *Move to Clewiston, Florida*

In early July Mr. Phillips began discussions with New Harvest Ministries Church in Clewiston, Florida, about an executive youth pastor position. On July 15 Mr. Phillips traveled to Clewiston for an interview. Mrs. Phillips joined him to interview for a teaching position with New Harvest Ministries Educational Center (New Harvest school), a school associated with New Harvest Ministries Church. Because their flight was out of Dallas-Fort Worth International Airport, petitioners drove from Yukon to Dallas the day before the flight and spent the night at a hotel near the airport.

Sometime following their interviews, petitioners were offered the positions, and on or around August 18 they moved to Clewiston. They drove from Yukon to Clewiston, one vehicle driven by Mrs. Phillips and the other towed by a rented moving truck driven by Mr. Phillips, and began their new positions on August 20. Mrs. Phillips's mother moved to Clewiston with petitioners, driving her own vehicle from Oklahoma to Florida around the same time.

The move to Clewiston proved to be a financial strain on petitioners. Petitioners had not anticipated that, because Clewiston is in a rural area, many facilities and amenities are geographically spread far apart. As part of his role as pastor, Mr. Phillips found himself driving great distances to meet with members of the parish, make hospital visits, and otherwise fulfill his duties. Mr. Phillips paid for the cost of this driving out of pocket and was not reimbursed by his employer.

In addition, Mrs. Phillips had taken a significant pay decrease to accept the teaching position with New Harvest school. She had no previous teaching experience and had to purchase most of her classroom supplies and materials, including chalk, pencils, paper, notebooks, markers, classroom decorations, and other common supplies. A significant percentage of the students in her class came from low-income families, often with little or no support from their parents, and she often had to provide them with basic classroom supplies, such as paper and writing instruments. Behavior problems were common in her class, and Mrs. Phillips attempted to incentivize good behavior with rewards, such as parties and a treasure chest reward system, among other efforts. The school did not provide reimbursement for any of these purchases.

Mrs. Phillips's mother, who had moved to Clewiston when petitioners did, struggled to find employment, and in July or August 2015 she moved in with petitioners. Petitioners had an extra bedroom in their home that they had been using to store records, documents, and office supplies, and to make room in their home they moved everything in that room to their garage.

III.  *Return to Oklahoma*

The financial stress and family issues took their toll on petitioners, and by early 2016 they decided that it was in their best interest to leave Clewiston. Their first child had been born earlier that year, and petitioners had expended much of their savings. They hoped to be allowed a few months for time to transition out of their current jobs and find new positions and housing, but Mr. Phillips's employer allowed him to remain at New Harvest Ministries Church for only three weeks. Mr. Phillips reached out to the Gate Church, his former church, and was offered a position there. In the ensuing weeks, petitioners rushed to find a new place to live, sold their home in Clewiston, and returned to Oklahoma.

4

At the time, petitioners had the funds available to rent only one moving truck. They took what they could carry back with them to Oklahoma, but Mrs. Phillips's mother had to put some items from the garage into storage in Clewiston, with the intent of returning in a few months to retrieve them. In doing so, petitioners inadvertently moved the boxes containing their business and tax records into the storage unit as well. By August 2017 Mrs. Phillips's mother had stopped paying for the storage unit, and the unit had been repossessed.

IV. *Tax Return and Examination*

Petitioners timely filed their 2014 joint income tax return. They reported total income of $68,899 and claimed above-the-line deductions of $250 for educator expenses and $4,950 for moving expenses, resulting in adjusted gross income of $63,699. Petitioners claimed itemized deductions totaling $50,116 and exemptions totaling $7,900 for taxable income of $5,683.

On Schedule A, petitioners reported (before application of the 2% floor of section 67(a)) unreimbursed employee expenses totaling $37,460 and tax preparation fees of $75. Petitioners' unreimbursed employee expenses consisted of $950 of excess educator expenses related to Mrs. Phillips's employment at New Harvest school and $36,510 related to Mr. Phillips's employment as a minister. Mr. Phillips's expenses were calculated on Form 2106, Employee Business Expenses, as follows:

| Form 2106 expenses | Amount |
|---|---|
| Vehicle expenses | $31,360 |
| Travel expense while away from home overnight | 2,800 |
| 50% of meals and entertainment expenses | 750 |
| Other business expenses | 1,600 |
| Total | $36,510 |

Petitioners reported business use of two vehicles. For vehicle 1, a 2003 Dodge truck, petitioners reported 34,000 business miles. For vehicle 2, a 2009 Nissan Altima, petitioners reported 22,000 business miles. They multiplied the claimed 56,000 total business miles driven by the standard mileage rate of $0.56 to arrive at the vehicle expense of $31,360.

Respondent selected petitioners' return for examination by respondent in 2017, and it was during the examination that Mr. Phillips discovered that his records were lost. Mr. Phillips was unable to provide respondent's revenue agent with the requested documentation but attempted to reconstruct his mileage log from memory. Respondent determined that petitioners were not entitled to the deductions for unreimbursed employee expenses or tax preparation fees and issued the notice of deficiency. Petitioners timely petitioned this Court for redetermination.

*Discussion*

I.    *Burden of Proof*

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and taxpayers bear the burden of proving that the determination is in error. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[2] Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deduction claimed. *See* Rule 142(a); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

II.   *Schedule A Expenses*

A.    *Legal Principles*

Section 162(a) permits taxpayers to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Taxpayers are required to maintain books and records sufficient to establish income and deductions. § 6001; Treas. Reg. § 1.6001-1(a), (e). If the taxpayers establish that they paid or

---

[2] Pursuant to section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issues relevant to ascertaining the taxpayer's tax liability. The Court concludes that section 7491(a) does not apply because petitioners have not produced any evidence that they have satisfied the preconditions for its application.

incurred a deductible expense but are unable to substantiate the precise amount, the Court may estimate the allowable amount. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). In estimating, the Court bears heavily against taxpayers "whose inexactitude is of [their] own making." *Id.* at 544. Taxpayers must present sufficient evidence to permit the Court to make an estimate. *Williams v. United States*, 245 F.2d 559, 560–61 (5th Cir. 1957); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985).

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and lodging away from home, and expenses with respect to listed property as defined in section 280F(d)(4), which includes passenger automobiles. *See Sanford v. Commissioner*, 50 T.C. 823, 827 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969). Consequently, even if such an expense would be otherwise deductible, section 274(d) may still preclude a deduction if the taxpayer does not present sufficient substantiation. Temp. Treas. Reg. § 1.274-5T(a).

To meet the heightened substantiation requirements, taxpayers must substantiate by adequate records or by sufficient evidence corroborating their own statements (1) the amount of the expense, (2) the time and place of the expense or use of listed property, (3) the business purpose of the expense or use, and (4) the business relationship. § 274(d).

To substantiate car and truck expenses through adequate records, taxpayers must maintain a contemporaneous log, trip sheet, or similar record, as well as corroborating documentary evidence, that together establish each required element of the expense. *See* Temp. Treas. Reg. § 1.274-5T(c)(2)(i) and (ii). In the absence of adequate records, taxpayers must establish each required element by "[their] own statement, whether written or oral, containing specific information in detail as to such element" and by "other corroborative evidence sufficient to establish such element." *See id.* subpara. (3)(i).

B.    *Employee Business Expenses*

1.    *Vehicle Expenses*

Petitioners have not satisfied the heightened substantiation requirements with respect to the claimed $31,360 deduction for vehicle expenses. Mr. Phillips testified that his mileage log and other records

from 2014 were lost, likely left in his mother-in-law's storage unit in Clewiston and abandoned after she neglected to pay the rent on the unit following the family's move back to Oklahoma in 2016. Mr. Phillips attempted to reconstruct his mileage from memory, including on his list only those trips for which he could recall the specific dates and other details. While the Court found Mr. Phillips to be forthright and believes he attempted to reconstruct his mileage in good faith, the reconstructed mileage log does not satisfy the requirements of section 274(d). It lacks sufficient specificity with respect to many of the trips, often describing only the city or state to which Mr. Phillips traveled, and lacks any additional corroborative evidence. *See* Temp. Treas. Reg. § 1.274-5T(c)(2). The reconstructed log appears also to include the mileage from petitioners' move from Yukon to Clewiston, even though that mileage was separately claimed on Form 3903 and allowed by respondent.

Accordingly, the Court sustains respondent's disallowance of petitioners' claimed vehicle expense deduction.

2.      *Travel Expenses*

With respect to the claimed $2,800 travel expense deduction, petitioners introduced into evidence copies of email receipts and itineraries from Priceline.com for a July 15 flight from Dallas to West Palm Beach for their job interviews for $748; a July 14 hotel stay in Dallas for $96.19; an August 1 hotel reservation for two rooms for Mr. Phillips and a colleague in Columbus, Mississippi, for $156.26; a September 4 flight from Fort Lauderdale to Atlanta for $324.18; and a car rental in Atlanta from September 4 through September 7, for $83.49.

The Court is satisfied that petitioners have met the strict substantiation requirements with respect to the Dallas hotel stay, Mr. Phillips's flight from Dallas to West Palm Beach, the flight from Fort Lauderdale to Atlanta, and the car rental. The information in the email receipts, along with the other evidence in the record, meets the requirements of section 274(d). Mrs. Phillips's flight is not a deductible business expense, however, because expenses incurred in seeking or investigating a new trade or business are not deductible under section 162(a), *see, e.g.*, *Evans v. Commissioner*, T.C. Memo. 1981-413, 1981 WL 10738, and there is insufficient information in the record to substantiate the business purpose of the Columbus trip or the portion, if any, that was paid by Mr. Phillips himself.

Accordingly, the Court holds that petitioners are entitled to a travel expense deduction of $877.86. The remainder of respondent's adjustment is sustained.

### 3. *Meals and Entertainment Expenses*

Petitioners claimed a deduction of $750 (50% of $1,500) for meals and entertainment expenses. Petitioners did not provide any receipts or other evidence beyond general testimony in support of the claimed meals and entertainment expenses. The Court sustains respondent's adjustment.

### 4. *Other Business Expenses*

Petitioners additionally claimed a deduction for other expenses of $1,600. These expenses included $1,000 for a used MacBook laptop, which petitioners made a section 179 election to deduct as a current expense, $200 for a used Nexus 7 tablet, and a used HTC One smartphone. Mr. Phillips could not recall at trial whether the $1,600 figure included any other purchases. Section 280F(d)(4) defines listed property to include any computer or peripheral equipment, including laptops and tablets. The laptop and the tablet are thus subject to the heightened substantiation requirements of section 274(d). Petitioners have not provided any evidence beyond their own testimony to substantiate any of the reported expenses.

Respondent's adjustment is sustained.

### C. *Excess Educator Expenses*

Section 62(a)(2)(D) allows elementary and secondary school teachers an above-the-line deduction for the cost of certain school supplies up to $250. *See also* § 62(d)(1). Educators may deduct unreimbursed employee expenses in excess of the $250 allowance provided by section 62(a)(2)(D) as miscellaneous itemized deductions on Schedule A pursuant to section 162.

Petitioners claimed the $250 educator expense deduction, as well as an additional deduction of $950 for excess educator expenses on Schedule A. Respondent allowed the $250 above-the-line deduction, but has disallowed the $950 deduction.

Mrs. Phillips testified that the New Harvest school provided little in the way of supplies, expecting teachers to provide their own chalk,

pencils, paper, notebooks, markers, classroom decorations, and nearly all other supplies. She also explained at trial that she often had to provide many of her students with basic classroom supplies, such as paper and pencils, because many of them came from disadvantaged or troubled backgrounds. In addition, she provided incentives for good behavior, including parties and other rewards.

Respondent argues that many of the reported expenses are not properly considered ordinary and necessary expenses of teaching because they were not required by her employer and, further, that petitioners have not substantiated any of the reported expenses. The Court need not decide which of Mrs. Phillips's teaching expenses would be considered deductible because petitioners have not offered any evidence to support their testimony in support of the expenses. The only item Mrs. Phillips identified with any specificity was $800 for a used laptop. As discussed above, laptops are listed property described under section 280F(d)(4) and subject to the heightened substantiation requirements of section 274(d). Respondent's adjustment to petitioners' excess educator expenses is sustained.

D.      *Tax Preparation Fees*

Finally, petitioners claimed, and respondent disallowed, a deduction of $75 for tax preparation fees. Petitioners did not introduce any evidence or other substantiation in support of this amount beyond testimony that they generally used TurboTax to prepare their tax returns. Respondent's adjustment is sustained.

III.    *Conclusion*

For the foregoing reasons, petitioners are entitled to a Schedule A deduction for unreimbursed employee expenses of $877.86. The remainder of respondent's adjustments are sustained.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered moot, irrelevant, or otherwise without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*